UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARICE ALLEN,                                        Case No. 12-15097

         Plaintiff,                              Robert H. Cleland
v.                                                   United States District Judge

COMMISSIONER OF SOCIAL SECURITY,                     Michael Hluchaniuk
                                                     United States Magistrate Judge

         Defendant.
_____/

## REPORT AND RECOMMENDATION
## CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 9, 11)

## I.    PROCEDURAL HISTORY

### A.    Proceedings in this Court

On November 17, 2012, plaintiff Marice Allen filed the instant suit seeking judicial review of the Commissioner's unfavorable decision disallowing benefits. (Dkt. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Robert H. Cleland referred this matter to the undersigned for the purpose of reviewing the Commissioner's decision denying plaintiff's claim for a period of disability and disability insurance benefits. (Dkt. 2). This matter is before the Court on cross-motions for summary judgment. (Dkt. 9, 11).

### B.    Administrative Proceedings

Plaintiff filed the instant claims on September 17, 2009, alleging that he became disabled beginning December 14, 2007. (Dkt. 6-5, Pg ID 128-29). The

1

claim was initially disapproved by the Commissioner on December 16, 2009.

(Dkt. 6-3, Pg ID 82).  Plaintiff requested a hearing and on May 31, 2011, plaintiff

appeared with an attorney before Administrative Law Judge ("ALJ") Charles

Headrick, who considered the case de novo.  In a decision dated June 20, 2011, the

ALJ found that plaintiff was not disabled.  (Dkt. 6-2, Pg ID 40-48).  Plaintiff

requested a review of this decision on July 5, 2011.  (Dkt. 6-2, Pg ID 34-36).  The

ALJ's decision became the final decision of the Commissioner when the Appeals

Council, on May 29, 2012, denied plaintiff's request for review.  (Dkt. 6-2, Pg ID

25-27); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **GRANTED** in part, that defendant's

motion for summary judgment be **DENIED**, that the findings of the Commissioner

be **REVERSED** in part, and that this matter be **REMANDED** for further

proceedings under Sentence Four.

## II.    FACTUAL BACKGROUND

### A.    ALJ Findings

Plaintiff was born in 1966 and was 41 years of age on the alleged disability

onset date.  (Dkt. 6-2, Pg ID 47).  Plaintiff's past relevant work included work as a

track repair (railroad), janitor, and auto assembly.  (*Id.*).  The ALJ applied the five-

step disability analysis to plaintiff's claim and found at step one that plaintiff had

2

not engaged in substantial gainful activity since the alleged onset date.  (Dkt. 6-2, Pg ID 42).  At step two, the ALJ found that plaintiff's degenerative joint disease of the right knee was "severe" within the meaning of the second sequential step. (*Id.*).  At step three, the ALJ found no evidence that plaintiff has an impairment or combination of impairments that meet or medically equal one of the listings in the regulations.  (Dkt. 6-2, Pg ID 42-43).

The ALJ concluded that plaintiff had the residual functional capacity to perform the full range of sedentary work.  (Dkt. 6-2, Pg ID 43-47).  At step four, the ALJ found that plaintiff could not perform his past relevant work.  (Dkt. 6-2, Pg ID 47).  At step five, the ALJ denied plaintiff benefits because a finding of "not disabled" is directed by Medical-Vocational Rule 201.28, and because plaintiff could perform a significant number of jobs available in the national economy. (Dkt. 6-2, Pg ID 47-48).

### B.    Plaintiff's Claims of Error

Plaintiff argues that the ALJ erred in assessing plaintiff's credibility and by failing to properly evaluate the medical records of evidence, thus forming an inaccurate hypothetical that did not accurately portray plaintiff's impairments. According to plaintiff, once the ALJ determined that plaintiff could not return to any of his past relevant work, the burden of proof shifted to the Commissioner to prove that plaintiff was capable, considering his age, education and past work

experience, of engaging in other work.  20 C.F.R. §§ 404.1520(b)-(f).  Plaintiff

contends that the Commissioner failed to satisfy his burden, warranting reversal or

remand.

Specifically, plaintiff avers that he testified at the hearing that he has

"difficult[y] going up and down steps" and that his sister and son do the household

chores.  (Tr. 36).  Additionally, while he said he can do some household tasks such

as sweeping, dusting, and mopping, he has "difficulties all the time but I just have

to adapt . . . ."  (Tr. 36).  He also indicated that "…any type of weight it just hurts

and I have to, at the end of night, my back and my other leg's hurting just because

of me not being able to put all the weight on it."  (*Id.*).  He also stated that he has

difficulty standing "for periods of time" and that it is "never, not pain free."  (Tr.

36-37).  Plaintiff further testified that he has difficulty sitting as well and has to

"extend [his right knee] forward, extend it back and it's always an excruciating

pain and I'm just - - I just have to deal with it."  (Tr. 37).  He stated he can only sit

for around 30 minutes at a time before having to get up.  (Tr. 38).  Plaintiff also

testified that his normal day consists of "laying or sitting mostly" and that the best

position is "laying down, elevating my leg, put some heat on it and ice, that's about

the most comfortable as I can get."  (Tr. 39).  Also, he testified to difficulty "doing

normal stuff, going to the bathroom, getting in and out of the shower, that's a job."

(Tr. 39).  In regards to sleeping, plaintiff indicated that he does not "really get a

full solid sleep" and that he takes naps as well.  (Tr. 40).

Plaintiff argues that his testimony is supported in the medical record, and that the judge erred in finding his testimony not credible.  According to plaintiff, his severe knee impairment is evidenced in the medical record at a record dated 6/30/2008, which indicates that he has right knee pain and that "he is limited in his activities of daily living because of the knee pain."  (Tr. 154).  That record further states an impression of "right knee osteoarthritis with history of right knee injury in August of 2004."  (Tr. 154).  Additionally, the record dated 3/31/2008 also indicated that plaintiff has right knee tenderness and that there were "crepitations present of the right knee."  (Tr. 155).  Further, in a report by Dr. Henderson dated 3/26/2008, he indicated an assessment of "…degenerative joint disease present at the right knee and irritation to the medial compartment at the medial collateral ligament as well as the lateral compartment."  (Tr. 166).  An MRI of the right knee dated 10/30/2008 indicates an impression of "abnormal medial and lateral menisci probably on the basis of postoperative changes," "tricompartment degenerative changes, similar to the prior study," "small ossific body within the lateral meniscus at the anterior horn/anterior body junction is similar to the prior study," "subchondral bone marrow edema within the anterior medial tibial plateau is slightly improved," "postsurgical changes," and "small 5 mm non-ossified intraarticular body posterior to the PCL is unchanged."  (Tr. 175-176); *see also*,

MRI of the Right knee dated 2/25/2008.  (Tr. 177).  Thus, plaintiff concludes, his

testimony regarding his severe medical impairments is supported by medical

documentation and the ALJ's finding that plaintiff's testimony was not credible is

clearly in error.

Plaintiff further complains that the judge did not find his carpal tunnel

syndrome as a severe impairment despite the fact that the record dated 6/30/2008

clearly indicates plaintiff has "bilateral carpal tunnel syndrome," and that plaintiff

in fact has "weakness of grasp and weakness of pinch."  (Tr. 154).  Also the record

dated 3/31/2008 indicates that plaintiff has "numbness and tingling in his right

hand as well as pain," and that he had a positive Tinel's test at the wrists as well.

(Tr. 155).  Furthermore, plaintiff contends that the ALJ erred in failing to

incorporate plaintiff's carpal tunnel syndrome into any of the hypothetical

questions, because the hypothetical question must represent the claimant in every

aspect.  Thus, plaintiff argues, since none of the ALJ's hypothetical questions

incorporated limitations relevant to plaintiff's carpal tunnel syndrome, the

hypothetical questions cannot be seen as complete.

Plaintiff further argues that the VE testified, in response to the hypothetical

questions posed by the judge, that plaintiff could perform a number of different

jobs, including a food order clerk, assembly, and charge account clerk.  (Tr. 24).

However, the VE also testified that if plaintiff's testimony was fully credible, that:

> …the testimony[] indicated that his sitting, standing and
> walking are fairly limited which would knock down a lot
> of jobs.  But due to the pain and discomfort he has to lay
> down, elevate his leg during the day, has to take naps
> during to relieve some symptoms…attends church about
> three hours on Sunday but in doing so he has to take an
> ice pack along, things like that so I feel like based on that
> he'd have a hard time doing any kind of competitive
> work without some accommodation.

(Tr. 47).  Thus, plaintiff concludes, if the ALJ would have found plaintiff's

testimony to be credible, he should have followed the VE's testimony in response

to the second hypothetical, which essentially precluded all work.  Plaintiff also

argues that the ALJ failed to give his treating physician controlling weight, or

provide good reasons for not doing so.

Plaintiff concludes that it is clear from the medical evidence of record and

his testimony that his ability to engage in substantial gainful activity is severely

limited as a result of his physical conditions, and that he would only be capable of

engaging in substantial gainful activity by enduring great pain, and that he should,

therefore, be found disabled in accordance with the Social Security Rules and

Regulations.  Based on these arguments and relevant case law, plaintiff requests

that this Court reverse the decision denying benefits and remand this case with

an award of benefits, or remand this matter for further proceedings consistent with

the above arguments.

### C.   Commissioner's Motion for Summary Judgment

The Commissioner contends that plaintiff's argument that the ALJ erred at Step Two of the Sequential Analysis in not finding carpal tunnel syndrome a severe impairment lacks merit. According to the Commissioner, the severity regulation serves the purpose of administrative efficiency by allowing the Commissioner to screen out entire claims where the claimant's alleged impairment or combination of impairments is found to impose no significant work-related limitations, and the ALJ here did not screen out plaintiff's claim by denying it at Step Two. Rather, the ALJ found that plaintiff had a severe impairment, degenerative joint disease of the right knee (Tr. 17), and then proceeded through the remaining steps to evaluate all of plaintiff's alleged impairments, including his carpal tunnel symptoms. (Tr. 21). The Commissioner states that the ALJ specifically considered evidence of weakness of grasp and pinch, right greater than left, and positive Tinel's in the wrists. (Tr. 21). The ALJ also considered several reports by Dr. Henderson who indicated no deficits in the bilateral upper extremities. (Tr. 21, 173, 174, 183). The Commissioner argues that where, as here, the ALJ finds at least one severe impairment and proceeds through the sequential analysis beyond Step Two, his failure to find that particular alleged impairments, standing alone, are severe, is hardly reversible error, and plaintiff's argument should be found unavailing. *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987).

The Commissioner also argues that the ALJ's residual functional capacity finding is supported by substantial evidence.  The ALJ found that plaintiff had a severe combination of impairments, and that those impairments imposed limitations, and thus restricted plaintiff to sedentary work.  (Tr. 17, 19).  The Commissioner contends that the ALJ then properly relied on vocational expert testimony and the Medical-Vocational Rules to determine that plaintiff could perform a significant number of jobs despite these limitations and, therefore, he was not disabled during the relevant period.  (Tr. 24); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (vocational expert testimony constitutes substantial evidence in support of ALJ's finding regarding the jobs a claimant can perform with her limitations).

According to the Commissioner, although plaintiff frames his argument as a challenge to the accuracy of the hypothetical question posed to the VE, this really translates into a challenge to the ALJ's residual functional capacity (RFC) finding.  Specifically, plaintiff argues broadly that the ALJ did not properly evaluate his right knee impairment or carpal tunnel syndrome, which he claims would preclude him from performing even sedentary work.  Additionally, plaintiff contends that the ALJ did not adequately address the treating physician's opinion.  The Commissioner argues that these arguments should be rejected because the ALJ more than adequately addressed the evidence of impairments.  Contrary to

9

plaintiff's assertion, the ALJ considered all of the objective medical evidence

pertaining to plaintiff's knee impairment, including progress notes from Drs.

Awerbuch and Henderson, imaging studies, and medical opinions, and then

reasonably concluded that the medical evidence supported a limitation for

sedentary work.  (Tr. 21-22).   For example, the ALJ considered plaintiff's reports

of pain levels at 4/10 or less with medication, and examination findings indicating

5/5 muscle strength in both lower extremities.  (Tr. 22, 165-66).  Indeed, in January

2010, Dr. Henderson saw plaintiff and noted full range of motion in the right knee.

(Tr. 174).  And, in March 2010, plaintiff reported an average 2/10 pain level with

medication and demonstrated full range of motion in the right knee.  (Tr. 173, 174).

The ALJ also noted imaging studies indicating well preserved

joint spacing in the knee.  (Tr. 22, 177-78).  Further, he considered plaintiff's

November 2010 report to Dr. Henderson that his right knee was pretty stable, his

medications were working well, and that he slept well most of the time.  (Tr. 22,

183).  The Commissioner thus argues that substantial evidence supports the ALJ's

finding.

     The Commissioner contends that while plaintiff also criticizes the ALJ's

lack of accommodation for his carpal tunnel symptoms, the ALJ did consider the

scant medical evidence relating to carpal tunnel, and reasonably determined that a

limitation for sedentary work fully accommodated plaintiff's limitations.  (Tr. 21).

In June 2008, shortly after diagnosing carpal tunnel, Dr. Awerbuch saw plaintiff in follow up, and noted plaintiff's report of less severe carpal tunnel symptoms and decreased occurrence of dropping items or difficulty with buttons. (Tr. 154). This was without any treatment or use of braces. (*Id.*). Further, plaintiff points to no evidence of recurring carpal tunnel symptoms that caused significant functional limitations. Thus, the Commissioner concludes, plaintiff fails to identify specific functional limitations not accommodated in the RFC finding, and instead asks this Court to remand for an award of benefits because he was not capable of any work. The Court should not find his argument persuasive.

The Commissioner also argues that the ALJ adequately considered plaintiff's treating physicians' opinions. The Commissioner notes that plaintiff did not specify the treating physician's opinion at issue, but presumes plaintiff was referring to Dr. Henderson, the only physician who stated an opinion of limitation. Specifically, Dr. Henderson opined that plaintiff could perform sedentary, work/light duty with no lifting, pushing, or pulling greater than 5 pounds, limited standing, no stooping, and only limited bending. (Tr. 167). The ALJ here found that plaintiff could perform a full range of sedentary work, which involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. (Tr. 19). *See* 20 C.F.R. § 404.1567(a). And, according to Social Security Ruling (SSR) 83-10: "Since being on one's feet is

11

required 'occasionally' at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday." SSR 83-10.  Additionally, SSR 83-10 clarifies that the full range of sedentary work entails no significant stooping.  SSR 83-10.

The Commissioner explains that the opinion of a treating source is entitled to controlling weight only when it is supported by medically acceptable clinical and laboratory diagnostic results, and it is not inconsistent with other objective evidence.  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004); *see also* 20 C.F.R. § 404.1527(d)(2). When the ALJ does not give controlling weight to a treating physician's opinion, he should explain what weight he assigned it after considering: (1) length of the treatment relationship and frequency of examinations; (2) nature and extent of the treatment relationship; (3) the relevant evidence that the treating physician relies upon; (4) the consistency of the opinion with the record as a whole; and (5) specialization of the treating physician. 20 C.F.R. § 404.1527(d)(1)-(5).  The Commissioner contends that here, the ALJ noted that Dr. Henderson had treated plaintiff from March 2008 to November 2010, and discussed Dr. Henderson's examination findings in detail.  (Tr. 21-22). The Commissioner contends that even though the ALJ did not expressly state that he was not assigning controlling weight to the opinion, this should be deemed

12

harmless error, given most of Dr. Henderson's limitations were consistent with those stated in the ALJ's RFC finding. *See Wilson*, 378 F.3d at 546-47 (ALJ's finding of limitations consistent with treating physician's limitations renders irrelevant the failure to discuss weight assigned); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001). The ALJ concludes that given the RFC limitation to sedentary work, the only greater restriction imposed by Dr. Henderson was lifting, pushing, or pulling of no more than 5 pounds (Tr. 167), and the ALJ provided sufficient reasoning for not accepting such limitations--lack of consistency with record evidence. The Commissioner argues that the ALJ articulated several internal inconsistencies in Dr. Henderson's examination findings that did not support all of the limitations in his opinion: "On several reports Dr. Henderson has indicated 5/5 strength in bilateral upper and lower extremities . . , full range of motion of the right knee, and normal tone." (Tr. 22). The ALJ also noted: "On November 1, 2010, the claimant reported to Dr. Henderson that his right knee is pretty stable. His left leg gets numb and weak when he stands too long. The claimant's medications are working well. He sleeps well most of the time." (Tr. 22). Additionally, the Commissioner asserts that the ALJ took into account plaintiff's testimony that he could lift much greater weight than Dr. Henderson opined–claiming that he could lift 10-20 pounds for up to 1/3 of the work day. (Tr. 21, 42). The Commissioner notes that the hearing testimony

is devoid of any mention of carpal tunnel symptoms or other upper extremity related difficulties. Thus, the Commissioner concludes, substantial evidence supports the ALJ's finding that plaintiff could lift, carry and pull more than the 5-pound restriction set by Dr. Henderson, and the ALJ reasonably, albeit implicitly, rejected those limitations. Since the ALJ's decision met the procedural safeguards of the process for reviewing treating physician opinions, the Commissioner reasons that it was harmless error for the ALJ to omit a detailed discussion of the weight he assigned Dr. Henderson's opinion. *See Wilson*, 378 F.3d at 546-47 .

The Commissioner also argues that the ALJ's credibility finding is supported by substantial evidence. Plaintiff argues that the ALJ failed to credit his allegations of severe knee pain and difficulty sitting and instead relied solely on objective medical evidence. The Commissioner contends that this argument should not be found persuasive because in evaluating plaintiff's credibility, the ALJ carefully and properly considered the objective medical evidence, as well as plaintiff's symptoms and complaints of pain, and the treatment received. (Tr. 20-23). The ALJ properly found that plaintiff was not fully credible because the objective medical evidence did not support significant limitations, and there was inconsistency between plaintiff's subjective complaints and his physician's treatment notes. (Tr. 22). In particular, the ALJ considered all progress notes from Drs. Awerbuch and Henderson, imaging studies, and medical opinions, and

14

reasonably concluded that the medical evidence did not support plaintiff's allegations of significant limitations. (Tr. 21-22). The Commissioner contends that, for example, the ALJ considered plaintiff's reports of pain levels at 4/10 or less with medication, and examination findings indicating 5/5 muscle strength in both lower extremities, and in January 2010, Dr. Henderson saw plaintiff and noted full range of motion in the right knee. (Tr. 22, 165-66, 174). In March 2010, plaintiff reported an average 2/10 pain level with medication and demonstrated full range of motion in the right knee. (Tr. 173, 174). The ALJ also noted imaging studies indicating well-preserved joint spacing in the knee (Tr. 22, 177-78), and he considered plaintiff's November 2010 report to Dr. Henderson that his right knee was pretty stable, and that he slept well most of the time. (Tr. 22, 183).

The Commissioner further argues that in addition to looking at the objective medical evidence, the ALJ also considered the evidence of plaintiff's treatment modalities. He noted that his medications were working well, and that with medication, plaintiff's reported pain levels were greatly diminished. (Tr. 22). The ALJ also noted that plaintiff, at several examinations, demonstrated full range of motion in the right knee, and further noted that plaintiff declined on several occasions to undergo knee surgery, and reasonably questioned how significant the pain levels truly were if plaintiff repeatedly refused to exhaust all avenues of possible pain relief. (Tr. 22). The ALJ also observed that plaintiff's testimony was

15

not consistent with the progress notes. (Tr. 23). For example, plaintiff testified that he did not get a lot of sleep at night or get through a night without pain, but he reported to Dr. Henderson that he had few disruptions of sleep due to knee pain, with proper medication. (Tr. 22, 39). And, as the ALJ noted, plaintiff testified that he had no pain-free knee position, but on examination, Dr. Henderson noted on several occasions that he had full range of motion in the right knee. (Tr. 173, 174). The Commissioner argues that such evidence further calls into question the credibility of plaintiff's complaints.

Finally, the Commissioner contends that the ALJ looked to other evidence, and noted that plaintiff was, despite his knee pain, able to perform a wide range of activities that included cooking meals, attending a 3-hour church service weekly, handling some household chores such as mopping, sweeping, and dusting, and walking to/shopping for groceries. (Tr. 20, 36, 38, 40, 44). The Commissioner concludes, therefore, that substantial evidence supports the ALJ's credibility finding.

The Commissioner contends that the ALJ's step five finding is also supported by substantial evidence. Specifically, at step five, the ALJ considered plaintiff's RFC, together with his vocational factors, to determine whether he could do other work. 20 C.F.R. § 404.1560(c). The Commissioner argues that the ALJ employed the methodology of the grids in his analysis and properly applied the

16

sedentary grid rules to plaintiff's RFC and found that Rule 201.28 directed a finding of "not disabled" in accordance with 20 C.F.R. § 404.1520(g).  (Tr. 24). The Commissioner concludes, therefore, that this Court should affirm the Commissioner's decision finding Plaintiff not disabled.  The Commissioner contends that the ALJ also posed a hypothetical question to the VE asking what jobs could be performed by an individual of plaintiff's age, education and vocational background, who was able to perform a full range of sedentary work. (Tr. 46).  The VE testified that such a person could perform jobs including food order clerk (1,200 jobs in the region and 40,000 nationally); assembly work (2,800 jobs in the region and 93,000 nationally); and charge account clerk (800 jobs in the region and 28,000 national jobs).  (Tr. 46-47).  The Commissioner argues that the vocational expert's testimony regarding jobs that accommodated these limitations also constituted substantial evidence to support the ALJ's finding that plaintiff was not disabled because he could perform other work.  *See Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001) (VE's testimony concerning availability of suitable work may constitute substantial evidence where testimony is elicited in response to hypothetical question that accurately sets forth plaintiff's impairments).

Finally, Commissioner contends that the Court may reverse the Commissioner's decision and award benefits only if all essential factual issues have been resolved and "the proof of disability is overwhelming or proof of

disability is strong and evidence to the contrary is lacking." *See Faucher v. Sec'y. of Health and Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994) (citing *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985)).  The Commissioner contends that here, there is not overwhelming proof of disability.  Rather, there is substantial evidence that supports the ALJ's finding that plaintiff was not disabled.  Thus, the Commissioner concludes, plaintiff has not established a proper basis for reversal or remand, and this Court should affirm the Commissioner's decision finding plaintiff not disabled.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's

testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole,

including that evidence which might subtract from its weight.  *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council."  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

### B.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq*.).  Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are

21

available to poverty stricken adults and children who become disabled.  F. Bloch,

Federal Disability Law and Practice § 1.1 (1984).  While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.
>
> Step Two:  If the claimant does not have a severe
> impairment or combination of impairments, that
> "significantly limits ... physical or mental ability to do
> basic work activities," benefits are denied without further
> analysis.
> Step Three:  If plaintiff is not performing substantial
> gainful activity, has a severe impairment that is expected
> to last for at least twelve months, and the severe
> impairment meets or equals one of the impairments listed
> in the regulations, the claimant is conclusively presumed
> to be disabled regardless of age, education or work
> experience.

> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).  At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the

23

decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

### C.    Analysis and Conclusions

#### 1.    The ALJ failed to comply with the treating source rule

Plaintiff was examined by Dr. Gavin I. Awerbuch, M.D., in March and June 2008. (Tr. 154-56). He had previously treated with Dr. Awerbuch, but had not been seen since February 2006, when he complained of right knee pain as well as pain, numbness and tingling in his right hand when he was doing assembly work which involved a great deal of repetitive motion using power tools. (Tr. 155). Plaintiff complained in March 2008 that his symptoms have been getting progressively worse, and that his symptoms were exacerbated by any kind of increased activities. (*Id.*). Dr. Awerbuch noted on examination tenderness over, and crepitations present in, the right knee, a decreased range of motion, a somewhat antalgic gait because of the knee problems, symmetrical deep tendon knee reflexes, negative straight leg raises, weakness of grasp and of pinch, right greater than left, positive Tinel's at the wrists, and that plaintiff was able to walk on tiptoe and heel, heel-to-toe walk, and squat and recover. (*Id.*). Dr. Awerbuch diagnosed plaintiff with right knee osteoarthritis, a history of right knee injury in

August of 2004, and right greater than left carpal tunnel syndrome.  (Tr. 156).  He

requested an EMG of plaintiff's upper extremities and a sleep study, prescribed

Celebrex, and noted that plaintiff will be off work.  (Tr. 156).

Plaintiff saw Dr. Awerbuch again in June 2008 for a follow-up examination,

and continued to complain of pain in his right knee and both hands, which limited

his activities of daily living.  (Tr. 154).  He acknowledged that his carpal tunnel

symptoms were not as severe since he had been off work, but that any repetitious

motions exacerbated the symptoms.  (*Id.*).  Dr. Awerbuch noted, on examination,

crepitations of both knees, right greater than left, weakness of grasp and pinch, and

positive Tinel's at the wrists, and diagnosed plaintiff with right knee osteoarthritis

with a history of right knee injury in August of 2004, bilateral carpal tunnel

syndrome and suspect obstructive sleep apnea.  (*Id.*).  Dr. Awerbuch gave plaintiff

a refill prescription for Flector patches and a heating pad.  (*Id.*).

Plaintiff also treated with physiatrist Dr. Reuben Henderson, D.O., from

March 2008 through November 2010.  (Tr. 165-79, 181-83).  Plaintiff complained

of "constant, throbbing, burning, grinding/bone on bone, radiating/shooting" knee

pain, which he rated currently as a 4 out of 10 with medication and a 10 out of 10

at its worst.  (Tr. 165).  Plaintiff reported that standing, walking, bending, lifting,

and twisting worsened his condition and that sitting, lying down, heat, ice, and rest

offered some relief.  (*Id.*).  On examination, Dr. Henderson noted plaintiff's gait is

25

antalgic, he had 5/5 strength in the lower extremities, his reflexes were 1/4 and symmetrical, he had pain on palpation at the right medial collateral ligament, and positive varus stretch on the right. (Tr. 166). Dr. Henderson noted that a February 2008 x-ray of plaintiff's right knee showed degenerative changes, including bone spurring, and a February 2008 MRI showed both menisci were abnormal. (Tr. 166). Dr. Henderson diagnosed plaintiff with degenerative joint disease of the right knee and instructed that orthotics or arch supports would help, and opined that "[f]rom a work standpoint, sedentary work/light duty with no lifting, pushing, or pulling greater than 5 pounds, limited standing, and no stooping, and limited bending would also be recommended." (Tr. 166-67).

Plaintiff treated with Dr. Henderson again in April and September 2008, January, April, July, and October 2009, and January, April, July and November 2010. (Tr. 168-79, 181-83). Plaintiff continued to complain of knee pain (ranging from 2 to 10 on a 10-point scale) and Dr. Henderson noted on examination generally decreased range of motion in the right knee (except for the October 2009 and January and April 2010 examinations, which noted full range of motion), 5/5 strength bilaterally in the lower extremities, and antalgic gait. (*Id.*). Dr. Henderson diagnosed right knee degenerative joint disease, prescribed Vicodin, and recommended permanent work restrictions. (*Id.*). Dr. Henderson also recommended that plaintiff consider surgery, but plaintiff indicated that he did not

26

want to undergo knee surgery.  (*Id.*).

The undersigned agrees with plaintiff that the ALJ failed to give sufficiently good reasons for not giving controlling weight to the opinion of Dr. Henderson as to plaintiff's functional work limitations.  As both parties acknowledge, greater deference is generally given to the opinions of treating medical sources than to the opinions of non-treating medical sources.  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007).  Treating source opinions must be given controlling weight if two conditions are met: (1) the opinion "is well supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record."  *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013).  "Closely associated with the treating physician rule, the regulations require the ALJ to 'always give good reasons in [the] notice of determination or decision for the weight' given to the claimant's treating source's opinion."  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citing § 404.1527(d)(2)).  Indeed, SSR 82-62 requires that "[t]he explanation of the decision must describe the weight attributed the pertinent medical and non-medical factors in the case and reconcile any significant inconsistencies.  Reasonable inferences may be drawn, but presumptions, speculations and suppositions must not be used."  SSR 82-62, 1982 WL 31386 at *4 (1982).

27

The ALJ discussed Dr. Awerbuch's and Dr. Henderson's examinations and treatment notes of plaintiff during the March 2008 through November 2010 time frame, including Dr. Henderson's March 2008 opinion that "[f]rom a work standpoint, sedentary work/light duty with no lifting, pushing, or pulling greater than 5 pounds, limited standing, and no stooping, and limited bending would also be recommended."  (Dkt. 6-2, Pg ID 45-46; Tr. 166-67).  The ALJ also discussed the results of x-rays and MRIs during that time period, as well as plaintiff's testimony regarding his symptoms and daily activities.  (Dkt. 6-2, Pg ID 44-46).  The ALJ, however, did not explain what weight, if any, he gave to the opinions of plaintiff's treating physicians, and instead stated only:

> Dr. Henderson has indicated that the claimant would be able to perform sedentary work on light duty.  On several reports Dr. Henderson has indicated 5/5 strength in bilateral upper and lower extremities, antalgic gait, full range of motion of the right knee, and normal tone.

(Dkt. 6-2, Pg ID 46).  The ALJ then concluded that plaintiff has the RFC to perform the full range of sedentary work.  (*Id.* Pg ID 43-47).  This perfunctory analysis wholly fails to satisfy the ALJ's obligation to state the weight he is giving to the treating physician opinion or to give good reasons for not giving controlling weight to the opinion.  As the Sixth Circuit stated:

> This requirement is not simply a formality; it is to safeguard the claimant's procedural rights.  It is intended "to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his

> physician has deemed him disabled and therefore might
> be especially bewildered when told by an administrative
> bureaucracy that [] he is not.  Significantly, the
> requirement safeguards a reviewing court's time, as it
> "permits meaningful" and efficient "review of the ALJ's
> application of the [treating physician] rule."

*Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (internal citations omitted).

Moreover, even if the ALJ determines that plaintiff's treating physician's opinions should not be given controlling weight despite the medical evidence in support, "the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician."  *Blakley*, 582 F.3d at 406. This was not done either.  And, even if the opinions of plaintiff's treating physicians were not entitled to controlling weight, they were entitled to deference. 20 C.F.R. § 404.1527(d)(2)(I).  As explained in SSR 96-2p:

> Adjudicators must remember that a finding that a treating
> source medical opinion is not well-supported by
> medically acceptable clinical and laboratory diagnostic
> techniques or is inconsistent with the other substantial
> evidence in the case record means only that the opinion is
> not entitled to "controlling weight," not that the opinion
> should be rejected. Treating source medical opinions are
> still entitled to deference and must be weighed using all
> of the factors provided in 20 CFR 404.1527 and 416.927.
> In many cases, a treating source's medical opinion will be
> entitled to the greatest weight and should be adopted,
> even if it does not meet the test for controlling weight.

29

SSR 96-2p, 1996 WL 374188 (July 2, 1996).  The ALJ failed to describe what weight, if any, he gave to Dr. Henderson's opinion, and failed to adequately address why Dr. Henderson's opinions should not be given controlling weight or even deference, as required by the regulations.  20 C.F.R. § 404.1527(d)(2).  The ALJ's perfunctory statement that "[o]n several reports, Dr. Henderson has indicated 5/5 strength in bilateral upper and lower extremities, antalgic gait, full range of motion of the right knee, and normal tone" fails to comply with the requirements set forth in the case law and regulations.  Although the ALJ's finding that plaintiff was not disabled ultimately may be justified, if an ALJ fails to explain why he rejected or discounted the opinions of the claimant's treating physicians, and how those reasons affected the weight accorded the opinions, the Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007) (citation omitted); *see also Cole*, 661 F.3d at 939 ("This Court has made clear that '[w]e do not hesitate to remand when the Commissioner has not provided "good reasons" for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJ's that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion.'") (citing *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009)).

### 2.    The ALJ's failure to comply with the treating source rule was not harmless

A violation of the good reasons rule may be "harmless error" if "(1) a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it; (2) if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion; or (3) where the Commissioner has met the goal of § 1527(d)(2) . . . even though she has not complied with the terms of the regulation." *Friend v. Comm'r of Soc. Sec.*, 375 Fed. Appx. 543, 551 (6th Cir. 2010) (quoting *Wilson*, 378 F.3d at 547)). "In the last of these circumstances, the procedural protections at the heart of the rule may be met when the 'supportability' of a doctor's opinion, or its consistency with other evidence in the record, is *indirectly* attacked via an ALJ's analysis of a physician's other opinions or his analysis of the claimant's ailments." *Friend*, 375 Fed. Appx. at 551 (citing *Nelson v. Comm'r of Soc. Sec.*, 195 Fed. Appx. 462, 470-72 (6th Cir. 2006)).

The Commissioner argues that, even though the ALJ did not adequately address Dr. Henderson's opinion, such error should be deemed harmless because "most of Dr. Henderson's limitations were consistent with those stated in the RFC finding" (Dkt. 11, Pg ID 254), and thus apparently argues that this case falls within the second exception. However, the undersigned does not believe that any error in complying with the regulations governing treating physician opinions is harmless in this case. Contrary to the Commissioner's assertion, the ALJ did not adopt Dr.

31

Henderson's assessment or make findings consistent with it.  Indeed, even the
Commissioner only argues that, at best, "*most* of Dr. Henderson's limitations were
consistent with those stated in the RFC finding."  (*Id.*).  The ALJ's RFC was for
the full range of sedentary work, which includes, among other things, lifting and
carrying up to 10 pounds at a time, occasional standing, and an ability to stoop
occasionally.  *See* SSR 96-9p, 1996 WL 374185 (July 2, 1996).  The ALJ's RFC
did not include any other exertional or non-exertional limitations at all, much less a
prohibition against stooping[1] and against lifting, pushing or pulling greater than
five pounds, and a restriction to limited standing and bending, as stated in Dr.
Henderson's opinion.  (Dkt. 6-2, Pg ID 46).

Moreover, it cannot be said that Dr. Henderson's opinions are so patently
deficient that the Commissioner could not possibly credit them, because the ALJ
found the doctor's opinions sufficient as to plaintiff's diagnosis.  (Dkt. 6-2, Pg ID
42); *Cole*, 661 F.3d at 940 (harmless error rule did not apply because the ALJ
relied on the treating physician's diagnosis); *Clement v. Comm'r of Soc. Sec.*, 2012
WL 313750, at *3 (E.D. Mich. Feb. 1, 2012) (same).  And, the ALJ's failure to
adequately address Dr. Henderson's opinion similarly does not meet the third
prong of the harmless error exception.  The undersigned cannot say that the goal of

---

[1] "An ability to stoop occasionally; i.e., from very little to up to one-third of the time is
required in most unskilled sedentary occupations. *A complete inability to stoop would
significantly erode the unskilled sedentary occupational base* . . . ."  SSR 96-9p, 1996 WL
374185 (July 2, 1996) (emphasis added).

§ 1527(d)(2) was met, because the ALJ's perfunctory analysis in his decision leaves this Court without a clear understanding of why the ALJ credited Dr. Henderson's opinion as to diagnosis but discredited it as to work limitation. Although the ALJ ultimately may decide that this opinion should not be given controlling weight, as explained above, he failed to conduct the proper analysis. Thus, the undersigned concludes that a remand is necessary so the ALJ may re-evaluate the treating physicians' opinions and supporting treatment evidence so that the parties will be able to understand the Commissioner's rationale and the procedure through which the decision was reached. *See Wilson*, 378 F.3d at 46 ("To hold otherwise . . . would afford the Commissioner the ability [to] violate the regulation[s] with impunity and render the protections promised therein illusory."); *Richardson v. Comm'r of Soc. Sec.*, 2013 WL 1278297 (E.D. Mich. Feb. 27, 2013) (remanding for a full discussion of the ALJ's reasoning for assigning "very little weight" to the treating physician's opinion, noting "[w]hile such an order may ultimately be an exercise in formality, such a discussion is necessary for the Court to engage in meaningful appellate review"), *adopted by* 2013 WL 1279057 (E.D. Mich. Mar. 26, 2013).

### 3.  The ALJ's RFC determination is not supported by substantial evidence

A related problem in this case is the lack of any other medical opinion regarding plaintiff's functional limitations.  The ALJ did not explain how he

33

reached his RFC determination.  There is no consulting physician opinion in the record and no Physical Residual Functional Capacity Assessment form, and the ALJ did not adopt the only medical opinion in the record regarding plaintiff's functional limitations.  Simply put, no other treating physician (other than Dr. Henderson in March 2008) or consulting or examining physician offered any other opinions regarding plaintiff's functional limitations.  Thus, we are left with the circumstance of the ALJ interpreting raw medical data to arrive at a residual functional capacity determination, without the benefit of an expert medical opinion.  In addition, the continued validity of Dr. Henderson's opinion is called into doubt because there were two years of treatment records following his 2008 opinion.

Importantly, in weighing the medical evidence, "'ALJs must not succumb to the temptation to play doctor and make their own independent medical findings.'" *Simpson v. Comm'r of Soc. Sec.*, 344 Fed. Appx. 181, 194 (6th Cir. 2009) (quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)).  Accordingly, "an ALJ may not substitute his [or her] own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence." *Id*. (internal quotations omitted); *see also Bledsoe v. Comm'r of Social Sec*., 2011 WL 549861, at *7 (S.D. Ohio Feb. 8, 2011) ("An ALJ is not permitted to substitute her own medical judgment for that of a treating physician and may not make her

34

own independent medical findings.").  In other words, "[w]hile an ALJ is free to

resolve issues of credibility as to lay testimony, or to choose between properly

submitted medical opinions, the ALJ cannot substitute his [or her] own lay

'medical' opinion for that of a treating or examining doctor."  *Beck v. Comm'r of

Soc. Sec.*, 2011 WL 3584468, at *14 (S.D. Ohio June 9, 2011), *adopted by* 2011

WL 3566009 (S.D. Ohio Aug. 12, 2011).  Yet that is precisely what the ALJ did in

this case.

The undersigned recognizes that the final responsibility for deciding the

RFC "is reserved to the Commissioner."  20 C.F.R. § 404.1527(d).  Nevertheless,

courts have stressed the importance of medical opinions to support a claimant's

RFC, and cautioned ALJs against relying on their own expertise in drawing RFC

conclusions from raw medical data.  *See Wyatt v. Comm'r of Soc. Sec.*, 2013 WL

4483074, at *16 (E.D. Mich. Aug. 19, 2007) ("ALJ RFC determinations must be

supported by medical opinions.") (citation omitted); *Isaacs v. Astrue*, 2009 WL

3672060, at *10 (S.D. Ohio Nov. 4, 2009) ("The residual functional capacity

opinions of treating physicians, consultative physicians, and medical experts who

testify at hearings are crucial to determining a claimant's RFC because '[i]n

making the residual functional capacity finding, the ALJ may not interpret raw

medical data in functional terms.'") (quoting *Deskin v. Comm'r Soc. Sec.*, 605 F.

Supp.2d 908, 912 (N.D. Ohio 2008)); *see also Nguyen v. Chater*, 172 F.3d 31, 35

(1st Cir. 1999) ("As a lay person, however, the ALJ was simply not qualified to interpret raw medical data in functional terms and no medical opinion supported the [RFC] determination."); *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985) ("By independently reviewing and interpreting the laboratory reports, the ALJ impermissibly substituted his own judgment for that of a physician; an ALJ is not free to set his own expertise against that of a physician who presents competent evidence.").

The undersigned recognizes that there are limited occasions when the medical evidence is so clear, and so undisputed, that an ALJ would be justified in drawing functional capacity conclusions from such evidence without the assistance of a medical source. *Mitsoff v. Comm'r of Soc. Sec.*, 2013 WL 1098188, at *9 (S.D. Ohio Mar. 15, 2013) (citing *Deskin*, 605 F. Supp.2d at 912) ("To be sure, where the medical evidence shows relatively little physical impairment, an ALJ permissibly can render a commonsense judgment about functional capacity even without a physician's assessment.")).  This does not appear to be such a case, particularly where the plaintiff was suffering from well-documented degenerative knee impairments and positive signs for carpal tunnel syndrome.  Under these circumstances, an expert medical advisor is necessary to properly evaluate

plaintiff's impairments, symptoms and functional limitations.[2]

Although ultimately a finding of no disability at either step four or five of the sequential evaluation may be appropriate in this case, substantial evidence does not exist on the record to support the current RFC determination. The only functional limitations in the record are those found in Dr. Henderson's March 2008 records, which the ALJ did not adopt. There is no RFC determination by any other physician. Thus, the ALJ's RFC determination was not based on any medical

---

[2] Plaintiff also complains that the ALJ erred in not finding that his carpal tunnel syndrome was a severe impairment at Step Two of the sequential analysis, and in not incorporating limitations from his carpal tunnel syndrome into the RFC. The Commissioner correctly states that where, as here, the ALJ finds at least one severe impairment and proceeds through the sequential analysis beyond Step Two, his failure to find that particular alleged impairments are "severe," standing alone, is not reversible error. *See Maziarz*, 837 F.2d at 244. However, this is true only when the ALJ goes on to consider any functional limitations arising from that impairment in the remaining steps of the disability analysis. *Id.* It is not clear here that the ALJ considered plaintiff's carpal tunnel syndrome at the other steps of the sequential evaluation process. While the ALJ noted that plaintiff's treating physician, Dr. Awerbuch, reported plaintiff's complaints of pain, numbness and tingling in his right hand, and his findings of weakness of grasp and pinch and positive Tinel's at the wrists, the undersigned notes that the ALJ did not discuss or even mention Dr. Awerbuch's diagnosis of right greater than left carpal tunnel syndrome or whether any functional limitations did or did not arise from such a diagnosis, or even find that plaintiff's carpal tunnel syndrome was not severe. (Dkt. 6-2, Pg ID 45). Given that most unskilled sedentary jobs require good use of both hands and the fingers, SSR 96-9p, plaintiff's alleged carpal tunnel syndrome is relevant to the ALJ's determination that plaintiff had the RFC to perform the full range of sedentary work. Dr. Awerbuch noted in a subsequent examination that plaintiff "finds that the carpal tunnel symptoms are not as severe since he has been off work, *however, any repetitious motions will exacerbate symptoms*. He does give a recent history of having difficulty with buttoning buttons as well as dropping things." (Tr. 154 (emphasis added, diagnosing plaintiff with bilateral carpal tunnel syndrome)). Although the undersigned renders no opinion as to the severity of plaintiff's alleged carpal tunnel syndrome or any functional limitations arising from that impairment, or even whether plaintiff continues to suffer such symptoms based on the absence of such complaints in Dr. Henderson's treatment notes, given that this matter is being remanded so that the treating physicians' opinions can be re-assessed and the opinion of an additional medical advisor obtained to support the ALJ's RFC, the undersigned suggests that plaintiff's alleged carpal tunnel syndrome also should be more fully addressed on remand.

opinion but was apparently formulated based on the ALJ's own independent interpretation of the medical data of record. Under these circumstances, the ALJ's RFC lacks any support whatsoever and remand is necessary because the ALJ improperly relied on this determination to conclude that plaintiff can perform a number of jobs in the national economy. *See Isaacs*, 2009 WL 3672060, at \*11 (remanding matter for further proceedings where ALJ rendered her RFC finding for medium work without reference to any medically determined RFC opinion bridging the raw medical data to specific functional limitations). A remand is necessary to obtain a proper medical source opinion and for a redetermination of plaintiff's RFC. And, given that the treating physicians' opinions will have to be re-assessed and the opinion of an additional medical advisor obtained for a redetermination of plaintiff's RFC, plaintiff's credibility will necessarily have to be re-assessed on remand, and the ALJ's Step IV and V findings will need to be re-evaluated.

Under Sentence Four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision 'with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Remand is appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding. *Faucher v. Sec'y of Health &*

38

*Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). Here, a judicial award of benefits is unwarranted because the record does not show that "proof of disability is overwhelming or proof of disability is strong and evidence to the contrary is lacking," as required for a judicial award of benefits in the Sixth Circuit. *Id.*

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED** in part, that defendant's motion for summary judgment be **DENIED**, that the findings of the Commissioner be **REVERSED** in part, and that this matter be **REMANDED** under Sentence Four.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule

39

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: September 13, 2013            s/Michael Hluchaniuk
                                    Michael Hluchaniuk
                                    United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on September 13, 2013, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Richard J. Doud, Derri T. Thomas, AUSA, Jessie Wang-Grimm and the Commissioner of Social Security.

                                    s/Tammy Hallwood
                                    Case Manager
                                    (810) 341-7850
                                    tammy_hallwood@mied.uscourts.gov